Chief Justice BENDER,
concurring in the judgment.
1 find this to be a very close case. The language of the 2003 Revenue Allocation Plan, as originally adopted, provided that an offender’s per capita payments were not to resume until the offender’s “court sentence has been completely served.” Given its most natural interpretation, this language seems to mean that the offender’s jail sentence, and perhaps periods of parole or probation, would need to be served before per capita payments can resume. It is common usage to refer to a jail sentence as being “served,” and also fairly common to refer to a person “serving” a period of probation or parole. People do not, however, ordinarily refer to an offender as “serving” his or her obligation to pay a fine or to pay costs. We ordinarily think of those obligations as being “paid,” rather than “served.” If the original language of the 2003 Plan meant to require offenders to pay all fines and costs before becoming entitled to receive resumed per capita payments, it would have been more natural to provide that the offender’s sentence obligations must be completely “satisfied,” rather than to provide that the sentence must be completely “served.”
*222 In addition to the meaning of the words themselves, there is for me another reason to have doubts about whether the original “court sentence has been completely served” language of the 2003 Plan meant to preclude resumption of per capita until fines and costs are paid out of an offender’s existing funds, so that resumed per capita payments cannot be used to pay those fines and costs. The result of this interpretation—which is the interpretation the Court adopts today—is that an offender with no financial resources, who has several thousand dollars in fines and costs to pay, may well forfeit per capita for many months'—perhaps for years—because of an inability to acquire or borrow the funds needed to pay the fines and costs. Other offenders, who commit the same offense and who are assessed the same fines and costs, may, on the other hand, have, or be able to borrow, the money to pay their sentencing obligations immediately. Those more affluent offenders may be able to begin receiving per capita payments promptly after serving their jail sentences. The defendant with fewer financial resources may thus end up paying a much greater penalty, in the form of an indefinite forfeiture of per capita, than the defendant with greater financial resources, who may forfeit only a few months’ per capita as the result of an identical offense. A very substantial inequality in penalty might thus exist even though both defendants committed exactly the same crime and received exactly the same sentence, and, ironically, the greater financial penalty would be imposed on the defendant with fewer financial resources.[1]
The interpretation of the original language of the 2003 Plan that we adopt today is, therefore, neither the, most natural nor the most logical interpretation of that language. In these circumstances, I would ordinarily be inclined not to adopt that interpretation, because of my belief that laws that impose penalties or forfeitures on people should only be applied to situations to which they clearly apply, and should not be applied when the ordinary person reading the law would be unsure about whether the penalty or forfeiture was applicable. It is ordinarily unfair, I think, to penalize or to impose a forfeiture on a person for certain acts, unless the person had clear notice that those acts would cause that penalty or forfeiture. In this case, I do not think that Haynes had clear notice, when he committed his offenses, that, if convicted and sentenced to jail, he would forfeit per capita payments until he was able to pay fines and costs out of funds other than resumed per capita payments. This is especially true, I think, because, until October 1, 2002, the applicable law clearly provided that fines could be paid out of per capita payments.
Despite these considerations, I nevertheless agree with the Court’s result because of three factors that make this case an unusual one for me. First of all, as the majority’s opinion shows, we do not have to guess here at what the Tribal Council meant to say when it adopted the 2003 Plan in September of 2002. By labeling its January 28, 2003, amendment to the relevant language of the Plan as a “clarification” of that language, rather than as a change in meaning, the Council has told us that it intended the clarified meaning from the beginning. Secondly, and to me most importantly, applying the Council’s intention to this case, despite the lack of clarity *223 in the language the Council initially. used to express its intention, does not cause the kind of unfairness that is usually caused when people are penalized through unclear statutes or ordinances. Thus, while Haynes might have been uncertain, when he committed his offenses, about the length of the forfeiture of per capita payments he would suffer if he were convicted, he could not in the least have been uncertain about whether what he was doing was a serious violation of the Nation’s Law and Order Code. The lack of clarity in the forfeiture provision, that is, could not possibly have led Haynes to believe that his conduct was lawful or permissible. Thirdly, the forfeiture that Haynes will suffer as a result of our decision in this case is a forfeiture of a future benefit (per capita payments) that is in many ways more accurately characterized as a privilege, rather than a right, of tribal membership. The Council, I think, should be given more latitude in regulating the incidents of such a future benefit than it has in imposing outright penalties like jail sentences or fines.
The forgoing factors lead me to conclude, although with considerable hesitation, that it is appropriate to apply the “clarified” meaning of the 2003 Plan to the present case. As a consequence, Haynes is not entitled to resumption of per capita payments until he satisfies the financial obligations of his sentence. I agree with my colleagues, therefore, that the Trial Court should not have ordered the amount of those obligations to be withheld from Haynes’ resumed per capita payments.

. This kind of inequality could be avoided if it were provided that, upon conviction of certain offenses, per capita would be forfeited for a specific period of time—six months or a year perhaps. Under such a rule, tribal members who committed the same crime would suffer the same loss of per capita, rather man having the period of per capita loss turn on an offender's financial resources.